1

2

3

4

5

6                                  UNITED STATES DISTRICT COURT
                                  WESTERN DISTRICT OF WASHINGTON
7                                            AT SEATTLE

8      RIDING FILMS, INC.,

9                  Plaintiff,

10            v.                                    Case No.  C13-0255RSM-RSL
                                                    Case No.  C13-0256RSL
11     DOES 1 - 35,                                 Case No.  C13-0277TSZ-RSL
       DOES 1 - 12,                                 Case No.  C13-0278RSL
12     DOES 1 - 44,                                 Case No.  C13-0287RSL
       DOES 1 - 44,                                 Case No.  C13-0288JLR-RSL
13     DOES 1 - 65,                                 Case No.  C13-0289RSM-RSL
       DOES 1 - 65,
14     DOES 1 - 64,                                 ORDER LIFTING STAY AND
                                                    EXTENDING SERVICE DEADLINE
15                 Defendants.

16

17            These actions were filed between February 12, 2013, and February 14,

18     2013.  Each of the Doe defendants is identified only by an IP address linked to the on-line

19     sharing of the movie "Dawn Rider."  Plaintiff asserts direct and contributory copyright

20     infringement claims against each Doe defendant.  The Court granted plaintiff's motions to

21     initiate early discovery from internet service providers in order to obtain information

22     sufficient to identify the owner of each IP address.  During the three months that these

23     actions were pending, none of the defendants was served, nor did plaintiff amend its

24     complaint to identify any of the Doe defendants.

25            On May 15, 2013, the Court issued orders to show cause acknowledging

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 1

1 concerns regarding the propriety of joinder and the possibility that plaintiff was using the

2 judicial authority of the United States to wrest improvident settlements from *pro se*

3 litigants under threat of huge statutory penalties.  The Court stayed the above-captioned

4 matters and required plaintiff to provide copies of all written communications with the

5 owners of the IP addresses, summaries of all oral communications with those individuals,

6 proof of Riding Films, Inc.'s ownership of the copyright at issue, and the identification of

7 all members/owners/stakeholders of NGN Productions, Inc., both direct and indirect, in

8 the form of an organizational tree that reaches back far enough to reveal all individual

9 members/owners and publicly-traded corporations.  In addition, the Court ordered

10 plaintiff to show cause why these cases should not be dismissed for improper joinder

11 and/or pursuant to the Court's inherent authority to control its docket.  Having reviewed

12 plaintiff's response, the Court finds as follows:

13     **A.  Joinder**

14         Federal Rule of Civil Procedure 20(a)(2) imposes two specific requirements

15 for the permissive joinder of defendants.  First, the right to relief against defendants must

16 arise out of "the same transaction, occurrence, or series of transactions or occurrences."

17 Fed. R. Civ. P. 20(a)(2)(A).  Second, there must be some question of law or fact common

18 to all defendants.  Fed. R. Civ. P. 20(a)(2)(B).  Taking the well-pled factual allegations of

19 the complaint as true and considering the declarations of plaintiff's investigator, the Court

20 finds that these requirements are easily met.  As to each separate lawsuit, plaintiff's

21 investigator found that a user of the IP addresses identified in the action possessed a

22 pirated copy of "Dawn Rider," that each copy was a reproduction of the same original,

23 and that the user offered for download a portion of its pirated copy at the investigator's

24 request, contributing to a fully-playable version of the movie.  Depending on how one

25 characterizes this activity, plaintiff's claims for relief arise from either the same

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 2

1  transaction (*i.e.*, its investigator's successful download of a single copy of "Dawn Rider")

2  or a related series of transactions (*i.e.*, the incremental downloads of portions of the

3  movie from each identified IP address).  Litigating the cases will also involve common

4  questions of fact and/or law regarding the existence of a swarm, the alleged downloads,

5  plaintiff's ownership of the copyright, and the elements of infringement.  The fact that

6  persons associated with the IP addresses may have individual defenses to plaintiff's

7  claims does not change the fact that there will be some common questions of law or fact:

8  not all of the legal and factual issues must be identical as to all defendants.  Patrick

9  Collins, Inc. v. Does 1-21, 282 F.R.D. 161, 168 (E.D. Mich. 2012).

10         Although the specific requirements of Rule 20 are met, the Court must also

11  determine whether permissive joinder will "comport with the principles of fundamental

12  fairness."  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000).  Factors

13  relevant to this determination include the possible prejudice to any party, delay caused by

14  joinder, the motives for joinder, the closeness of the relationship between the joined

15  parties, notice to the parties, and the effect of joinder on jurisdictional issues.  Desert

16  Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980).  In the Ninth

17  Circuit, "[w]e start with the premise that Rule 20 . . . is to be construed liberally in order

18  to promote trial convenience and to expedite the final determination of disputes, thereby

19  preventing multiple lawsuits."  League to Save Lake Tahoe v. Tahoe Reg'l Planning

20  Agency, 558 F.2d 914, 916-17 (9th Cir. 1977).

21         Jointly litigating the facts related to the seven swarms plaintiff has

22  identified and the legal issues related to infringement is more efficient for plaintiff and the

23  Court than litigating hundreds of suits involving only one IP address each.  In addition,

24  the nature of the swarm and the BitTorrent protocol, with its many pieces and multiple

25  sources, suggests that joint litigation may be necessary for plaintiff to substantiate its

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 3

1  theory that defendants acted in concert to download copyrighted material, even if the

2  segment downloaded from a particular defendant, considered alone, might not constitute

3  copyright infringement.  Defendants, on the other hand, gain no appreciable advantage

4  through individual litigation:  in either case, defendants will be able to offer individual

5  defenses to the allegations.  Nor does there appear to be any significant risk of liability by

6  association.[1]  Jointly litigating these claims also allows defendants, many of whom will

7  undoubtedly proceed *pro se*, to pool resources, rely on arguments raised by other

8  defendants, and/or benefit from the participation of retained counsel.  The only potential

9  advantage to severance appears to be the hope that plaintiff will give up its claims, no

10 matter how meritorious, in the face of mounting costs.  If, as the Court is willing to

11 assume at this stage in the proceeding, plaintiff's allegations are true and its copyright has

12 been infringed, such a result is neither just nor fair.

13        The Court further finds that there is no indication that joinder will impact

14 the Court's subject matter jurisdiction and that defendants' alleged participation in a

15 knowing and intentional file-sharing scheme constitutes interrelated acts justifying joint

16 litigation even if defendants remained unaware of the identity of their fellow BitTorrent

17 users.

18        The Court is, however, concerned about the impact that joinder has had on

19 the handling of related litigation and how that handling reflects on plaintiff's motives for

20 amassing the groups of defendants in these cases.  To be clear, the Court finds that joinder

21 under Rule 20 for purposes of prosecuting copyright infringement claims against

22 members of a swarm in a single lawsuit can be appropriate.  There is no indication,

23

24 _____

25     [1]  Contra Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-AA, 2013 WL 1900597 (D. Or. May
   4, 2013) (finding availability of statutory damages and potential that unintentional infringers could be
26 prejudiced by being sued along with original seeder and/or serial infringers precludes joinder).

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 4

1  however, that plaintiff was actually prosecuting any of these actions.[2]  Despite receiving

2  identifying information regarding some of the individuals associated with the IP

3  addresses at issue, plaintiff failed to affect service, asserting that complications in

4  obtaining subscriber information regarding every IP address somehow prevented it from

5  naming any individual defendants.  This approach to litigation has caused delay and raises

6  all sorts of potential for abuse, as discussed more fully below.  In addition, the failure to

7  prosecute the actions suggests that the motive for joinder is not to promote the underlying

8  goals of efficiency, justice, and expeditious resolution of the disputes, but rather to use

9  the pendency of this litigation to obtain unilateral discovery regarding non-parties and to

10  push for quick (and potentially unjustified) settlements.

11          In the circumstances of this litigation, the Court finds that joint litigation

12  against numerous participants in a single swarm satisfies the specific requirements of

13  Rule 20(a)(2) but that the joinder has been used to create a procedural imbalance which,

14  left unchecked, would not comport with the principles of fundamental fairness.

15      **B.  Lack of Service**

16          Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120

17  days after the complaint is filed, the court – on motion or on its own after notice to the

18  plaintiff – must dismiss the action without prejudice against that defendant or order that

19  service be made within a specified time."  The time for service has now passed, but

20  plaintiff had approximately a month left on the service clock when the above-captioned

21  matters were stayed.  There is no reason to assume that timely service would have been

22

23          [2]  In response to the various orders to show cause issued in this and the related copyright

24  infringement cases, counsel provided virtually identical memoranda and declarations, making it
    impossible to determine exactly what steps plaintiff took to prosecute these particular actions or what

25  communications were had with one or more of the Doe defendants in these seven cases.  The Court will
    therefore assume that counsel took the exact same steps and engaged in the same types of

26  communications with regards to all of the pending cases.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 5

1   affected, however.  Three months after these cases were filed, no proofs of service were

2   on record (as required by Rule 4(l)), and plaintiff had not moved to amend its complaints

3   to identify any of the Doe defendants.  Given the manner in which counsel prosecuted the

4   R&D Film 1 and Flypaper Distribution cases, it appears that plaintiff intended to pursue

5   discovery and settlement negotiations without serving any defendants.

6            As subscribers became aware of the lawsuits, they predictably began calling

7   plaintiff's counsel in order to obtain information.  Counsel apparently referred them to a

8   webpage of "Frequently Asked Questions," invited them to prove their innocence, and/or

9   negotiated settlements.  In addition, counsel sent demand letters to a handful of

10  defendants in these cases.  Despite the Court's instruction, plaintiff has not provided

11  copies of the demand letters and has not summarized its oral offers of settlement.  The

12  only communications provided for the Court's review are two copies of an email string

13  that arose at the tail end of settlement negotiations with a subscriber related to an IP

14  address in C13-0052RSL and a Settlement & Release Agreement with a subscriber

15  related to an IP address in C13-0288JLR-RSL.  What preceded the email string and

16  settlement agreement is unknown, and the Court is left to guess regarding the tenor and

17  accuracy of statements made to potential defendants.  The little information available to

18  the Court is not reassuring.

19            Counsel's "educational FAQ website" is found at

20  www.fronteirlawgroup.wordpress.com and attached to this Order as Exhibit A.  The first

21  question is "Why am I being sued?"  Of course, the individual reading the FAQs has not

22  yet been sued, and plaintiff does nothing to clarify the procedural posture of the case.

23  The email string filed under seal shows that, even at the point of consummating a

24  settlement, the individual mistakenly believed that a case had been filed against him or

25  her.  The second question is about the justification for the settlement demand amount, but

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 6

1    plaintiff has provided very little information regarding oral or written settlement demands

2    in the above-captioned matters.  The FAQs themselves are silent on this issue, although

3    they do mention the maximum statutory penalties and a $675,000 jury verdict in a

4    copyright infringement action in the District of Massachusetts.  Plaintiff's advice

5    regarding the association of counsel (the court will not appoint counsel in a civil suit) and

6    the validity of possible defenses (failure to password protect and/or monitor the use of

7    your internet connection may constitute negligence) is suspect.  Finally, plaintiff invites

8    the individual reading the FAQs to provide evidence proving that he or she did not

9    download "Dawn Rider."

10            When plaintiff sought permission to conduct discovery in these cases, it

11   represented the discovery as both limited and efficacious:  by subpoenaing subscriber

12   identification information from the ISPs, plaintiff would be able to pursue these lawsuits

13   and protect its copyrights.  It turns out, however, that identifying the account holder tells

14   us very little about who actually downloaded "Dawn Rider" using that IP address.  As one

15   court noted, "it is no more likely that the subscriber to an IP address carried out a

16   particular computer function . . . than to say an individual who pays the telephone bill

17   made a specific telephone call."  In re BitTorrent Adult Film Copyright Infringement

18   Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012).  In fact, it is less likely.  Home

19   wireless networks are ubiquitous, meaning that a single IP address can simultaneously

20   support multiple computer devices throughout the home and, if not secured, additional

21   devices operated by neighbors or passersby.  Thus, the risk of false positives is very real.

22   Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y. 2012).  It is not clear that

23   plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual

24   contentions regarding an internet subscriber's infringing activities based solely on the fact

25   that he or she pays the internet bill.  Plaintiff seems to be aware of this problem and has

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 7

1   refrained from identifying the Doe defendants more specifically even after it learns the

2   name of the subscriber.  Plaintiff does not, however, take the appropriate steps of

3   returning to the Court to seek an extension of time in which to serve and permission to

4   conduct additional discovery.  Rather, plaintiff demands that the subscriber prove he or

5   she did not download "Dawn Rider."  Therein lies the rub.  Plaintiff has effectively

6   obtained access to unrepresented individuals and parleyed that access into open-ended

7   and unlimited discovery, despite the very narrow discovery order entered by the Court.

8           In this context, the 120-day service deadline is the only thing that limits

9   plaintiff's unsanctioned discovery expedition.  If plaintiff feels it has enough information

10  to satisfy its Rule 11 requirements by simply identifying the subscriber associated with an

11  IP address, it should serve the complaint and initiate litigation subject to the limitations

12  imposed by the rules of civil procedure.  If, on the other hand, plaintiff would have

13  trouble justifying a factual contention that the internet subscriber must, by virtue of that

14  fact, be the downloader, it could seek an extension of the service deadline, explaining

15  why it was unable to obtain the information in a timely manner and identifying steps to be

16  taken that would allow litigation to begin.  If those steps include additional discovery,

17  further permission of the Court would be necessary.

18          In short, plaintiff must actually prosecute the claims it has asserted.  Instead,

19  plaintiff's litigation strategy seems to be to use the mere pendency of these actions to

20  create a period of time in which it can scare subscribers into settlement as the only means

21  of avoiding both litigation costs and harsh statutory penalties.  The limited

22  communications disclosed to the Court show that plaintiff makes every effort to "educate"

23  the subscriber regarding the statutory penalties he or she faces.  Coupled with the clear

24  implication that evidence of IP address ownership is legally sufficient to establish

25  copyright infringement and the demand that the subscriber prove his or her innocence, it is

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 8

1  not surprising that subscribers – whether guilty or not – may choose to settle.  While the

2  risk of improvident settlements and overreaching[3] cannot be eradicated, the Court will not

3  allow plaintiff to pick and choose the procedural rules it likes while ignoring deadlines and

4  discovery limitations.  Absent extraordinary and unforeseeable circumstances, the service

5  deadline will be strictly enforced in order to reduce the risk of overreaching.

6

7        For all of the foregoing reasons, the stay of the above-captioned cases is

8  hereby lifted and plaintiff may again pursue identifying information regarding the Doe

9  defendants from the ISPs pursuant to the Court's prior discovery order.  Plaintiff shall

10  have sixty days from the date of this Order to complete discovery and affect service.

11  Failure to file proof of service on or before the sixtieth day will result in the dismissal of

12  plaintiff's claims as to each unserved defendant.  The Court takes under advisement issues

13  regarding ownership of the copyright and/or plaintiff's failure to provide complete

14  information regarding communications with subscribers and the ownership of NGN

15  Productions, Inc.

16

17        Dated this 7th day of August, 2013.

18        _MM S Lasnik_
          Robert S. Lasnik
19        United States District Judge

20

21      [3]  The settlement agreement filed under seal in this matter raises additional concerns.  The

22  agreement not only specifies the payment amount necessary to obtain a release of the copyright claims
    and the normal trappings of such an agreement, but also includes a unilateral confidentiality provision, a

23  unilateral non-disparagement provision, warranties running from the subscriber to plaintiff, a waiver of
    any right to challenge the validity of the copyright or plaintiff's ownership thereof, a patently false

24  assertion that the parties jointly drafted the agreement, and a questionable declaration of federal
    jurisdiction.  Worse yet, a breach of any of the promises, representations, or warranties on the part of the

25  subscriber will expose him or her to liability for plaintiff's attorney's fees and will resurrect the copyright
    infringement claims, but this time with arguments regarding validity and ownership foreclosed.  This

26  enforcement provision runs only in favor of plaintiff.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 9